```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NIRZA M. GARCIA,                  :
                                  :
          Plaintiff,              :   CIVIL ACTION
                                  :
     v.                           :   NO. 10-CV-1117
                                  :
MARIANA BRACETTI ACADEMY          :
CHARTER SCHOOL,                   :
                                  :
          Defendant.              :
```

## MEMORANDUM AND ORDER

**Joyner, C.J.**                                         **March    6, 2012**

Before this Court are Defendant's Motion for Summary Judgment (Doc. No. 18), Plaintiff's Response in opposition thereto (Doc. No. 19 and 21),[1] and Defendant's Reply (Doc. No. 20). For the reasons set forth in this Memorandum, the Court grants the Motion for Summary Judgment and dismisses, with prejudice, Defendant Mariana Bracetti Academy Charter School.

### FACTUAL BACKGROUND

Plaintiff Nirza M. Garcia ("Plaintiff") worked as a Spanish teacher at Mariana Bracetti Academy Charter School ("Defendant") during the 2005-2006 academic year. Defendant hired Ms. Garcia on a "non-compliance plan" that required that she pass the Spanish

---

[1] Plaintiff's opposition to Defendant's Motion for Summary Judgment that was electronically filed with the Court on May 31, 2011 (Doc. No. 19) included only the exhibit. Defendant did receive a copy of the opposition brief. Despite notice from Defendant that this brief did not appear properly filed with the Court, Plaintiff's counsel did not remedy this situation until November 2, 2011, at our prompting. See Doc. No. 21.

II Praxis exam and pursue Pennsylvania certification during her year-long tenure. By its own terms, Plaintiff's employment agreement expired on June 30, 2006. Although Ms. Garcia was not "highly qualified" pursuant to No Child Left Behind, Defendant hired her because she was a native Spanish speaker, had substantial teaching experience, and, being from Puerto Rico, shared a common cultural background with many of the students.

As a teacher, Ms. Garcia was under the direct supervision and control of Mr. Richard Roshong, the school's principal. The parties dispute how well Plaintiff performed as a teacher and the extent to which she complied with the job requirements. However, all agree that Defendant decided not to offer Plaintiff a new employment agreement for the 2006-2007 academic year. While Mr. Roshong had input, Ms. Angela Villani, the school's Chief Executive Officer, made the ultimate decision not to renew Ms. Garcia's contract. Plaintiff worked until the end of June 2006 and Defendant paid her for the entire term of her employment.

Plaintiff brought this action alleging that she was not offered a new contract because of discrimination based on her race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. ("Title VII"), as well as in retaliation for her opposition to Defendant's

discriminatory treatment of Puerto Rican individuals, in violation of 42 U.S.C.§ 2000e(3a).[2]

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 535 (3d Cir. 2007); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the non-moving party cannot rely on "bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F. 3d 584, 594 (3d Cir. 2005). When the non-moving party is the plaintiff, she must "make a showing sufficient to establish the existence of [every]

---

[2] Plaintiff brings parallel claims for the same discriminatory conduct under the Pennsylvania Human Relations Act, 43 P.S. §951, *et seq.* ("PHRA"). We address these claims together since Title VII and the PHRA share the same framework of evaluation. See Matthews v. Hermann, 2008 U.S. Dist. LEXIS 35726 at *12 (E.D. Pa. Apr. 30, 2008).

element essential to [her] case and on which [she] will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## DISCUSSION[3]

**COUNT 1- DISPARATE TREATMENT**

To sustain a claim under Title VII, Plaintiff must establish that she "(1) is a member of a protected class; (2) was qualified for [the] position; (3) suffered an adverse employment action; and (4) suffered the adverse action under circumstances that give rise to an inference of discrimination." Brown v. Boeing Co., 468 F. Supp. 2d 729, 734 (E.D. Pa. 2007). Defendants dispute each of these elements except the first. As a native of Puerto Rico, Ms. Garcia is a member of a protected class under Title VII.

### *Qualified for Position*

Plaintiff admits that she failed to satisfy the compliance plan outlining necessary steps toward state certification, and thus has failed to meet the No Child Left Behind (NCLB) qualifications for teachers. See Def. Mot. Ex. 3, at 101-103, 105.  This is one of Defendant's proffered reasons for not extending her employment tenure. Yet, Defendant does not

---

[3] We employ the *McDonnell Douglas* burden-shifting analysis paradigm when analyzing claims of discrimination on the basis of race and national origin. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). First, Plaintiff must establish a *prima facie* case of discrimination. Once Plaintiff puts forth a *prima facie* showing, then the burden shifts to Defendant-Employers "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. If Defendants fulfill this burden of production, then the burden shifts back to Plaintiff to prove that the reasons offered by the Defendants were merely pretext. Id.

explicitly argue that Plaintiff's lack of qualifications defeat her *prima facie* case; Defendant simply notes that Plaintiff is not qualified for the position in a passing footnote. Def. Mot. at 16 n.3. While Plaintiff did not meet the NCLB qualifications for teachers, we cannot assess based on the record before us whether she was therefore unqualified for the position within the meaning of Title VII. We reserve analysis on this point as Plaintiff's claim fails for other reasons, discussed *infra.*

***Adverse Employment Action***

The U.S. Supreme Court has defined an "adverse employment action" to be a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Reynolds v. Dep't of the Army, 439 Fed. Appx. 150, 153 (3d Cir. 2011)(quoting Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998)). Defendant argues that its actions do not meet this definition because Plaintiff was not terminated. Plaintiff's tenure expired and Defendant simply chose not to extend her employment contract. However, "[t]he failure to renew an employment arrangement, whether at-will or for a limited period of time, is an employment action, and an employer violates Title VII if it takes an adverse employment action for a reason prohibited by Title VII..." Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315,

320 (3d Cir. 2008). Thus, there is sufficient evidence that Plaintiff suffered an adverse employment action.

### *Discriminatory Animus*

In assessing whether an employer discriminated against an employee in violation of Title VII, we compare the treatment of the employee alleging such unlawful conduct with the treatment of similarly situated employees outside the protected class. "The 'central focus' of the *prima facie* case 'is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin.'" Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003) (quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)). Plaintiff does not need to show that she was replaced by someone outside the protected class. See Pivirotto v. Innovative Sys., 191 F.3d 344, 352 (3d Cir. 1999). However, in the alternative, she must show that Defendant continued to seek out individuals with qualifications similar to her own after refusing to renew her contract, or that Defendant treated her differently during her tenure than other similarly situated teachers who were not members of the protected class. See Sarullo, 352 F.3d at 798 n.7.

Plaintiff has not identified any non-Puerto Rican individual whose contract was renewed despite the failure to abide by a contractual compliance plan. Nor does Plaintiff provide any

6

evidence that her position was later filled by a teacher who was not a member of the protected class. Instead, she asserts that her supervisors treated her differently than other teachers on account of her race and national origin. She provides several examples of the perceived pattern of discriminatory and harassing conduct, which we examine *seriatim*:

1. On the first day of teacher orientation in August 2005, Mr. Roshong asked Ms. Garcia not to speak with him in Spanish because he did not know the language. Def. Mot. Ex. 3, at 15:16-19:4. When asked why she felt this was discrimination based on her national origin or race, Plaintiff simply responded: "Because I was speaking Spanish." Id. at 18:16-24. Not only does Plaintiff provide no evidence that Mr. Roshong reacted differently in a similar situation with another teacher, his actions seem reasonable as he was merely informing Plaintiff that he could not understand what she was saying.

2. In November 2005, Mr. Roshong refused Plaintiff's request to take her students on a field trip to see a play in Scranton, PA. Id. at 19:25-21:4. Ms. Garcia interpreted this as discrimination because she was the only Puerto Rican teacher and she was denied the opportunity to take her students on a field trip whereas other teachers were not. Id. at 21:5-22:25. However, she does not identify which teachers were allowed to go on field trips, let alone trips of a similar type at a similar distance from Philadelphia or at that same time.

3. As a part of her job, Plaintiff included comments about student performance in their end of semester grade reports. For students of Puerto Rican descent, she wrote some of these comments in Spanish and told parents that even though the student was of Puerto Rican descent, the student struggled with the Spanish language. Mr. Roshong found the explicit inclusion of the students' national origin to be discriminatory in tone and instructed her to edit the comments to remove such references before the comments were sent out. Id. at 23:4-26:17. Plaintiff found it discriminatory that Mr. Roshong suggested that her comments were discriminatory, asserting that he misunderstood her intent because he could not read

    Spanish. Id. at 26:18-29:15. She does not provide any examples of other teachers who wrote comments in a language other than English or mentioned specifics about the students' nationalities or ethnicities.

4. In January 2006, Ms. Garcia was supposed to be covering a particular class during a final examination but was not where she was supposed to be at the time the exam was set to begin. Mr. Roshong yelled at her down the hallway, in a manner she perceived to be unprofessional, telling her where she needed to be. Id. at 31:5-35:4. She does not know whether any other staff members were similarly delinquent and treated in a different manner by the principal.

5. Ms. Garcia felt she was discriminated against because the principal didn't want her to participate in an Ecuador exchange program, although he did ultimately allow her to do so. Id at 46:6-18. In January, Ms. Garcia went to Harrisburg for a conference related to the school's Ecuador exchange program. Upon return she heard that Mr. Roshong had been angry that she hadn't left a lesson plan, though Plaintiff claims she did. Id. at 38:14-39:9, 40:3-41:18, 42:4-19. Plaintiff did not speak with Mr. Roshong at that time nor was she written up for failure to follow the school policy of leaving lesson plans.

6. Mr. Roshong would not let Plaintiff call students' parents on the telephone. Id. at 48:12-51:24. She acknowledges that Mr. Roshong explained to her that it was the administration's job to take such actions. She is not aware of any other teacher that was permitted to contact students' parents on the phone. Id. At the time when other teachers were allowed to talk to parents, Ms. Garcia was equally allowed to do so, with no difference in treatment. Id. at 51:25-52:10.

7. Mr. Roshong would enter her classroom without advance notice, or would ask her to attend meetings in his office. Id. at 62:6-67:10, 353:20-354:25. He would "yell and scream" at her in front of the students about "foolish things that could wait." Id. at 355:1-15. Mr. Roshong also rushed her to turn in her grades and progress reports in a particularly demanding manner. Id. at 52:11-62:5. Plaintiff does not know whether Mr. Roshong treated other teachers in this same manner and

8

provides no evidence to support her assertion that he did not.

8. In April 2006, Ms. Villani gave Ms. Garcia permission to take the Ecuador exchange students on a field trip despite Mr. Roshong's opposition. Id. at 67:13-69:2. When Ms. Garcia returned to the school campus at 4 pm, she did not reenter the school building and instead left for the day. The next day Mr. Roshong called Ms. Garcia into his office, inquired into why she didn't come back into the school building after the trip and asked her to make a photocopy of the field trip permission slip she used. Id. at 70:1-72:16. Again, Ms. Garcia has no personal knowledge of whether Mr. Roshong treated other teachers differently under similar circumstances and she provides no evidence for this claim. Id. at 72:18-73:20.

9. Plaintiff argues that she was reprimanded for showing her class an R-rated movie while this was a common, undisciplined practice among other teachers. Id. at 109-125. In particular, Plaintiff showed her class *Maria Full of Grace*, a film about a pregnant Columbian teenager who becomes a drug dealer to make money for her family. She did not get permission from the school administration or the students' parents beforehand. However, Plaintiff admits to having no actual knowledge regarding whether other teachers likewise did not get permission for showing R-rated movies or whether the principal refrained from reprimanding any who did not. She also asserts that her students were shown violent R-rated movies by a substitute teacher in her absence, but she does not provide evidence that Mr. Roshong was aware of or condoned this incident. Id.

10. Plaintiff mentions five Caucasian teachers by name as individuals who she feels were treated in a significantly disparate manner than herself. However, she admits that she has no actual knowledge of the job performance of any of these teachers; she just felt that the principal was nicer to them. See Ex. 17, at ¶ 25(1), 25(3), 25(5); see also Ex. 3, at 369-371. In fact, the only concrete allegation of disparate treatment that we could ascertain from the record is that Ms. Claire Yates, one of these teachers, had a printer in her classroom while Plaintiff did not and had to ask Ms. Yates for permission to share. According to Plaintiff, this shows how Ms. Yates was treated more favorably by the school. Ex. 3 at 331:4-332:19.

9

No reasonable juror could find these identified incidents raise an inference of discriminatory animus. Plaintiff has not provided evidence, other than her own speculations, that any other teacher was treated more favorably than her under the same circumstances. See Chestnut v. Gen. Motors Corp., 2008 U.S. Dist. LEXIS 67252 at *9 (E.D. Pa. Sept. 3, 2008). Plaintiff provides nothing other than her own subjective belief that actions taken by her principal that she didn't agree with were taken by him on the basis of her national origin or race.[4] But, her "subjective belief that race played a role in an employment decision is insufficient to establish an inference of discrimination," McDonnaugh v. Teva Specialty Pharms., LLC, 2011 U.S. Dist. LEXIS 98638 at *16-17 (E.D. Pa. Aug. 31, 2011), as is her general feeling that "she was treated poorly." Sencherey v. Stout Road Assocs., Inc., 2011 U.S. Dist. LEXIS 14179 at *24 (E.D. Pa. Feb. 11, 2011).

The only evidence Plaintiff provides, besides her own bare

---

[4] For example, when asked why she felt that Mr. Roshong's entering into her classroom without previous notice constituted harassment related to her race or national origin, Ms. Garcia answered:
> A: Why he was insisting to go in and out of my classroom. Why he had to disrupt me? Why he never sat down with me to overlook lesson plans, talk about problem students?
> Q. Is that it?
> A. I related that to my race...Because he didn't want to talk nothing to Ms. Garcia.
> Q. My question is, why do you think that is related to your race as opposed to he doesn't like you for some other reason?
> A. Because as a professional, I can see when somebody treats you in a nice way. If somebody treats you in a way that he did to me, that's discrimination to my race. I find that discrimination.
> Def. Mot. Ex. 3, at 353-355.

assertions, is a single page affidavit from Mr. William Diaz, who is a security guard at Mariana Bracetti Academy Charter School.[5] In his affidavit, Mr. Diaz states:

> On at least one occasion (I cannot recall the specific date), I recall standing outside of Mr. Roshong's office while his door was open at least ½ foot wide, and witnessed him having a telephone conversation with another teacher discussing Ms. Garcia and heard him specifically state, 'Who's this, Ms. Garcia? That fucking spic don't learn.' Pl. Resp. Ex. 1.

Shortly after he made this statement, Mr. Roshong apparently realized Mr. Diaz was listening outside the open door, and proceeded to get up and close it. Plaintiff argues that since there is no similar evidence that any other teacher at the school was called a racially hostile name, she has met her burden of showing racial discrimination.[6]

While we question whether this single stray remark could satisfy the *prima facie* requirements, we need not decide this matter. Even assuming *arguendo* that the fourth element has been met, Plaintiff's claim would still ultimately fail to survive

---

[5] In her deposition testimony, Plaintiff claims students told her that the principal referred to her as a "bitch" behind her back, though he never made such comments to her face nor comments about her being Hispanic or from Puerto Rico. Ex. 3 at 35:14-36:9; 42:23-46:4. "Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment." Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009).

[6] She also asserts that Mr. Diaz overheard Mr. Roshong say that he didn't want to meet with "those fucking Puerto Ricans" in reference to the students' parents at the September 2005 Parent's Night event. See Ex. 3, at 156:23-157:24. However, in his affidavit, Mr. Diaz does not mention overhearing any such conversation. Moreover, Ms. Garcia admits that she did not hear Mr. Roshong make this remark and does not know if anybody else overheard other than Mr. Diaz. Id.

summary judgment. Defendant has provided numerous legitimate non-discriminatory reasons for refusing to renew Plaintiff's employment contract. In particular, before this decision was made by school administrators, Plaintiff was put on probation for her failure to follow school policies and procedures, her multiple performance deficiencies, her refusal to attend scheduled meetings with her supervisor, and her failure to take necessary steps to become certified in Pennsylvania. See, e.g., Ex. 3 at 100:17-24, 105:18-21, 209-213:5, 213:16.  See generally Defs. Mot. Exs. 1, 2, 5-16. Based on the record, we determine that no reasonable fact finder could conclude that these reasons are mere pretext for illegal discrimination. See Ade v. KidsPeace Corp., 698 F. Supp. 2d 501, 513 (E.D. Pa. 2010).

To establish pretext, Plaintiff must provide "evidence that would allow a fact finder reasonably to '(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action.'" Sarullo, 352 F.3d at 800 (citing Jones v. Sch. Dist. of Phila., 198 F. 3d 403, 413 (3d Cir. 1999)); Ade, 698 F. Supp. 2d at 513. Plaintiff has not provided any evidence from which a fact finder might reasonably disbelieve Defendant's articulated reasons for not renewing the employment contract; actually, Plaintiff admits to most of the actions upon which Defendant based its decision.

Moreover, the comment that Mr. Diaz overheard Mr. Roshong make on the phone, even if true, is not enough evidence by itself to establish pretext. "Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>, 983 F.2d 509, 545 (3d Cir. 1992)). Even assuming this comment was in reference to Plaintiff, Mr. Diaz does not indicate when he overheard it, he does not know who Mr. Roshong was talking to at the time, or whether this comment was in anyway connected to the decision not to renew Plaintiff's contract. We do not believe that a reasonable fact finder could conclude, on the basis of this stray remark alone, that the school's decision not to renew Plaintiff's contract was likely motivated or determined by invidious discrimination, especially since Mr. Diaz does not know whether he overheard this racist comment before or after that decision was made. Furthermore, Ms. Villani, as CEO, made the ultimate decision not to offer Ms. Garcia a renewed employment contract based on an independent assessment of Ms. Garcia's work performance. <u>See</u> Def. Reply Ex. 1. Thus, we dismiss Plaintiff's disparate treatment claim.

**COUNT II- HOSTILE WORK ENVIRONMENT**

A hostile work environment claim requires discrimination that is "severe and pervasive." <u>Rose v. Woolworth Corp.</u>, 137 F. Supp. 2d 604 (E.D. Pa. 2001); <u>see also</u> <u>Andreoli v. Gates</u>, 482 F.3d 641, 643 (3d Cir. 2007). The U.S. Supreme Court has emphasized that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Clark v. Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 270-71 (2001). As discussed above, Plaintiff has not shown that she suffered discrimination that was severe or pervasive, and thus, we dismiss this claim.

**COUNT III- RETALIATION**

To establish a *prima facie* case of retaliation, plaintiff must demonstrate that (1) she engaged in a protected activity; (2) her employer took an adverse action against her; and (3) there was a causal link between the protected activity and the adverse action. <u>See</u> <u>Moore v. City of Phila.</u>, 461 F.3d 331, 340-41 (3d Cir. 2006); <u>Burlington Northern & Santa Fe Ry. v. White</u>, 548 U.S. 53 (2006).

Ms. Garcia claims she contacted U.S. Senator Arlen Specter, State Senator Christine Tartaglione, and Philadelphia Councilman

Juan Ramos on her own behalf to remedy the discriminatory treatment she and Puerto Rican students suffered at Mariana Bracetti Academy Charter School. The timing of these calls—whether before or after Ms. Garcia received notice of non-renewal—is unclear because Ms. Garcia appears to contradict herself. See Def. Mot. Ex. 3 at 83:6-86:24, 357:25-364:12. Viewing the facts in the light most favorable to Plaintiff, we will assume that she made these calls before she knew that her contract was not being renewed for the 2006-2007 school year.

Plaintiff's complaints about her own performance evaluations and working conditions to the school administration, absent a formal charge of racial discrimination, do not constitute protected activity within the meaning of Title VII. See Jones v. Univ. of Penn., 2003 U.S. Dist. LEXIS 6623, at *32 (E.D. Pa. 2003); Walden v. Georgia-Pacific Corp., 126 F.3d 506, 513n.4 (3d Cir. 1997). Moreover, in order for Plaintiff's complaints to these public officials to constitute protected activity, she must have implicated an employment practice made illegal by Title VII. Id.; 42 U.S.C. § 2000e-3(a). "[G]eneral complaints of unfair treatment will not suffice." Davis v. City of Newark, 417 Fed. Appx. 201, 203 (3d Cir. 2011). Plaintiff contends that her reports to the officials meet this standard.[7]

---

[7] Plaintiff also asserts that she was retaliated against because Mr. Roshong mistakenly believed that Plaintiff assisted a Puerto Rican student's mother in making a complaint to Senator Tartaglione after the student was suspended from attending graduation at the end of June. See Def. Mot. Ex. 3 at 73-75. This allegation, even if Plaintiff had provided supporting evidence, does not form

15

But even if she engaged in protected activity, Plaintiff has not sufficiently demonstrated the causal relationship required to sustain a retaliation claim against Defendant. Plaintiff testified that Mr. Roshong was contacted with regard to his discriminatory conduct by these individuals and then refused to renew Plaintiff's employment contract in retaliation for reporting him. However, she provides *nothing* to support her belief that this happened. She did not observe any such interaction, nor does she allege that Mr. Roshong said anything of the sort to her after these supposed conversations with public officials. Plaintiff admits to having no firsthand knowledge that any of these representatives, or their staff members, contacted Mr. Roshong.[8]  She does not provide any evidence, aside from her baseless suspicion, that anyone involved in the decision not to renew her contract was aware of Plaintiff's complaints to public

---

the basis for a retaliation claim under Title VII. See Lamb-Bowman v. Del. State Univ., 152 F. Supp. 2d 553, 561 (D. Del. 2001)(finding that Plaintiff's protest against the unfair treatment of student athletes, even if a discriminatory practice in violation of Title IX, was not by implication an allegation that the school engaged in unlawful gender discrimination in employment, and therefore not a protected activity upon which Plaintiff could base her Title VII retaliation claim); Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 136 n.5 (3d Cir. 2006).

[8] 
    Q. What, if anything, did these offices do with your complaint, if you know?
    A. They called.
    Q. Who did they speak with?
    A. Roshong. Mr. Roshong.
    Q. How do you know that?
    A. Because they told me that they were going to call him.
    Q. How do you know they actually spoke to him.
    A. Well, I don't know.
    Q. So you have no idea?
    A. I have no idea when they spoke to--to Mr. Roshong.
    Q. Or if they spoke to him; is that right?
    A. Yeah.
Def. Mot. Ex. 3 at 88:18-89:9.

officials. Mr. Roshong declared that he was never contacted and did not know of Ms. Garcia's reports to others; Plaintiff offers no evidence to refute this. See Def. Reply Ex. 3.[9] Thus, we dismiss her retaliation claim against Defendant.

## CONCLUSION

Plaintiff has not made a sufficient showing to sustain her charges that she suffered invidious discrimination on the basis of race or national origin as a result of disparate treatment, hostile work environment, or retaliation in violation of Title VII. Accordingly, we grant Defendant's Motion for Summary Judgment. An order follows.

---

[9] We note that even if Plaintiff could establish a *prima facie* case for retaliation, the claim would fail as a matter of law because she cannot fulfill her burden of showing that the legitimate non-discriminatory reasons proffered by Defendant are merely pretext, as discussed *supra*.